IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

JOSE S. FARINANGO MUENALA,                     Case No.  24-cr-75-wmc
a.k.a. JOSE FARINANGO,
a.k.a. J. SANTY FARINANGO,
                Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

For over a decade, the defendant used a lie to gain admission to arts and crafts shows for the purpose of selling jewelry: that he, a Pueblo Indian, handmade the jewelry he would display at the shows. Once at the art shows, his lie became bigger and more detailed. The defendant claimed to customers he was a Pueblo tribal member from Taos[1] and a third-generation jewelry maker. He spun a tale that he and his brother made almost all the jewelry in their studio in Albuquerque, New Mexico, and what they didn't make, their family did. Considering these lies, the hefty price tag on the jewelry—hundreds of dollars, for some pieces—made sense.

In reality the defendant was nothing more than a reseller of jewelry, most of which had been imported from the Philippines. What's more, the defendant grew up in

---

[1] Taos Pueblo, known for having the one of the oldest, continuously inhabited residences in North America, is located near the city of Taos, New Mexico. *See* Taos Pueblo, https://taospueblo.com/, last visited January 26, 2026; *see also* UNESCO World Heritage Connection, Taos Pueblo, https://whc.unesco.org/en/list/492/, last visited January 26, 2026. The United States recognizes 19 different Pueblo tribes, each of which is a sovereign nation.

Ecuador and moved to the United States when he was 12. After years of playing the pan flute at farmers markets and representing himself as a proud South American tribal member,[2] he pivoted to the more profitable endeavor of passing off cheap imported jewelry as authentic, Pueblo-made pieces.

The defendant now appears before this Court for selling jewelry in a manner that falsely suggests it is Indian produced, in violation of the Indian Arts and Crafts Act, 18 U.S.C. § 1159(b)(1)(A)(i). The parties jointly recommend a 3-year period of probation and the imposition of a fine. For the reasons articulated below, the United States asserts that a 3-year period of probation reflects the seriousness of the offense, provides just punishment, and considers the nature and circumstances of the offense and the defendant's personal history. Further, a fine is appropriate in light of the defendant's available assets and the significant financial gain that stemmed from his offense.

> I. <u>The defendant intentionally lied; he did not merely make a mistake or fail to correct wrong assumptions.</u>

The Court must firmly reject any suggestion that the defendant merely confused the phrase "Native American" or "Indian" to mean a native of South America, or a member of a South American tribe. The evidence shows that the defendant appreciated the difference between someone who is a member of a North American Indian tribe versus a South American Indian tribe, and exploited that difference for financial gain.

---

[2] Screenshot of website featuring the defendant as a pan flute plater, Exhibit 1. This was previously provided in discovery to defense and probation.

2

When agents with the U.S. Fish and Wildlife Service confronted the defendant at an art show in Ann Arbor (following his indictment in this case), the defendant readily acknowledged that Native American meant Indian. In front of his booth loaded with southwest-style jewelry bearing tags reading, "Genuine Indian Handcrafted Sterling Silver Jewelry,"[3] he was quick to say he was not Native American but was from South America and belonged to the Quichua tribe. (Revised PSR, R. 59, ¶ 24.) The defendant denied ever telling customers that he was from New Mexico or that he belonged to a Pueblo tribe, and insisted he told customers that he is native from South America, not North America.

Similarly, the Court must also reject the assertion that the defendant failed to correct customers in their mistaken assumption that he was Indian. His dozens of applications to arts festivals, the reports from H.F. and N.C., and statements he made to agents during their undercover purchase in Mercer belie this defense. The defendant explicitly and deliberately chose to market himself as a Pueblo jewelry maker.

The defendant also knew his lies were criminal. Receipts from Turquoise Factory, an online wholesaler of imported jewelry, show the defendant had to acknowledge a reseller agreement for every purchase he made. Between 2021 and 2024 alone, the defendant made 36 bulk purchases of jewelry from Turquoise Factory. With every purchase, he agreed that he understood that "Turquoise Factory sells only imported

---

[3] Photos of the defendant's booth in Ann Arbor, Michigan, Exhibit 2. These photos were previously provided to defense and probation in discovery.

3

goods (primarily from the Philippines), which are properly marked in accordance to laws and regulations, and I understand that misrepresenting the jewelry as anything other than of imported origin is against the law." (Revised PSR, R. 59, ¶ 20.) In June 2023—a mere two months before his sale to agents at Loon Day in Mercer—the defendant bought $2,812 worth of jewelry and acknowledged Turquoise Factory's reseller agreement.[4]

The defendant, as a member of a South American tribe, and as a person who claims to have lived in the Navajo Nation,[5] is in the best position to understand that Indians are not a homogenous group. Vast differences exist, even regionally, between tribes. This extends to differences in language, art forms,[6] social traditions, and spiritual beliefs. By choosing to represent himself as Pueblo, and specifically a Pueblo Indian from Taos, the defendant knowingly and intentionally took on a distinct identity that carried with it particular meaning.

II. The defendant's crimes were longstanding and profitable.

---

[4] Turquoise Factory receipt, Exhibit 3. This was previously provided to defense and probation by email.

[5] The Navajo Nation consists of approximately 27,000 miles and extends into three states: Arizona, Utah, and New Mexico. *See* The Official Site of the Navajo Nation, https://www.navajo-nsn.gov/, last visited Jan. 26, 2026.

[6] Pueblo people, for example, have a rich tradition of making pottery. *See* Pubelo Art, https://libapps.salisbury.edu/nabb-online/exhibits/show/native-americans-then-and-now/pueblo-art, last visited January 26, 2026.
Navajo women are particularly renowned for rug weaving. *See* Navajo Arts, https://discovernavajo.com/navajo-arts/, last visited January 26, 2026.

The defendant co-opted the identity of a Pueblo jewelry maker solely for financial gain. When the defendant's application to sell crafts at a 2015 pow wow (hosted by the Museum of Indian Culture) was rejected because there were no more spaces for South American handiwork, he was quick to respond that his work was "100% Native North American." (Revised PSR, R. 59, ¶ 23.) Eight years later, when the defendant applied to the 2024 Loon Day Festival, he had an opportunity to come clean and apply as a resale business.[7] The defendant did not, because his lies were more profitable than the truth.

The dozens of applications the defendant submitted, along with records from Block, demonstrate the defendant's scheme was longstanding. The defendant submitted applications to sell "Native American handcrafted" jewelry as early as 2012. That year, he made 1,050 sales, and his business steadily increased overtime. So too did the scope of his lies. Beginning in 2015, the defendant began identifying as Pueblo on his applications. In total, between 2012 and 2023, the defendant made 40,905 customer sales and grossed $2,686,991.[8]

### III. The preponderance of the evidence supports the loss amount calculation in the PSR.

The PSR utilizes a loss amount of $361,061.64, which is the amount the defendant grossed in sales in 2023. This loss amount is supported by the preponderance of the

---

[7] Loon Day 2024 application, Exhibit 4. This was previously provided to defense and probation in discovery.

[8] This number does not account for any cash or online sales.

evidence. Further, the amount used by the PSR accounts for less than 15% of the defendant's gross profit from 2012 through 2023, and less than 15% of his total individual sales during that timeframe.

First, in 2023, the defendant explicitly represented himself as Pueblo and the maker of the jewelry he displayed for sale to at least three known individuals: to H.F. in January; to N.C., also in January; and to an undercover agent in August.

Second, he represented himself as a Native American jewelry at least two other times in 2023. In promotional materials for the Three River Art Festival (held in June 2023)[9] and the Grand Haven Art Festival (held later in June 2023), Farinango described himself as either Pueblo or Native American, and that he made the jewelry he offered for sale.[10]

Third, the defendant purchased several thousand dollars' worth of imported jewelry from Turquoise Factory in 2023, and his credit card statements show he purchased jewelry from other known importers that same year. While in Ann Arbor, the defendant admitted to agents that he purchased jewelry from Turquoise Factory and resold it.

Taken together, it is more likely than not that the defendant's sales in 2023 were the result of his longstanding, continuous scheme to sell imported jewelry as Pueblo-made. The defendant's reported statements to customers, his recorded statements to

---

[9] During the undercover purchase by agents at Loon Day, the defendant stated he had attended this festival.

[10] Report, Exhibit 5. This was previously provided to defense and probation in discovery.

agents, and his own description in promotional materials all point to the conclusion that the defendant made his money in 2023 by falsely suggesting the jewelry he made was Indian produced, in violation of the Indian Arts and Crafts Act.

IV.     Conclusion

For the reasons addressed above, and for those to be addressed at sentencing, the United States respectfully asks this Court to accept the parties' joint recommendation of 3 years' probation and a fine.

Dated January 26, 2026.

Respectfully submitted,

CHADWICK M. ELGERSMA
United States Attorney

By:
/s/
TAYLOR L. KRAUS
Assistant United States Attorney